**ORIGINAL**

RECEIVED & FILED

DEC 7   3 41 PM '09

U.S. BANKRUPTCY COURT
MARY A. SCHOTT, CLERK

1  John M. Samberg (Nevada Bar. No. 10828)
   **SULMEYERKUPETZ**
2  9190 Double Diamond Parkway
   Reno, Nevada 89521
3  Telephone: (877) 253-0120

4
   Please direct service to:
5  333 South Hope Street, 35th Floor
   Los Angeles, California 90071
6  Facsimile: (213) 629-4520

7  Attorneys for Plaintiffs
8  ANDREW DONALD MURPHY,
   CONNIE MURPHY, and
9  FIRST AMERICAN TRUST FSB, as Trustee
   of the ANDREW DONALD MURPHY IRA
10 ACCOUNT #68-6796-00

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In Re: | Case No.: |
| WALT A. WALTERS, | Chapter 11 |
| Debtor | Adversary No.: |
| ANDREW DONALD MURPHY, an individual; CONNIE MURPHY, an individual; and FIRST AMERICAN TRUST FSB, as Trustee of the ANDREW DONALD MURPHY IRA ACCOUNT #68-6796-00 | **COMPLAINT FOR DETERMINATION OF DISCHARGEABILITY OF DEBT**<br><br>[11 U.S.C. § 523(a)(2)(A), (a)(4), (a)(6)] |
| Plaintiffs, | Status Conference: |
| v. | DATE: [TO BE SET]<br>TIME: [TO BE SET]<br>CTRM: |
| WALT A. WALTERS, individually and doing business and doing business as AMERICAN MORTGAGE COMPANY, | |
| Defendant. | |

Plaintiffs Andrew Donald Murphy, Connie Murphy, and First American Trust FSB, as Trustee of the Andrew Donald Murphy IRA Account #68-6796-00 (collectively, "Plaintiffs"), allege as follows:

## JURISDICTION AND VENUE

1. Plaintiffs hereby initiate this adversary proceeding to determine the dischargeability of a debt pursuant to 11 U.S.C. § 523. This adversary proceeding relates to Chapter 11 Case No. BK-S-09-26137-BAM, <u>In re Walt A. Walters</u>, pending in the United States Bankruptcy Court for the District of Nevada. This a core proceeding under 28 U.S.C. § 157(b)(2)(I).

2. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and 11 U.S.C. § 523. Venue is founded upon 28 U.S.C. §§ 1408 and 1409(a).

## PARTIES

3. Plaintiff Andrew Donald Murphy ("Don") is, and at all times mentioned herein was, an individual residing in Orange County, California, and 65 or more years of age.

4. Plaintiff Connie Murphy ("Connie") is, and at all times mentioned herein was, an individual residing in Orange County, California. As of January 2006, Connie was 65 or more years of age. Don and Connie are married to each other and shall be referred to herein at times collectively as the "Murphys".

5. First American Trust FSB, formerly known as First American Trust Company, as Trustee of the Andrew Donald Murphy IRA Account #68-6796-00 ("First American"), is a chartered Federal Savings Bank with the Office of Thrift Supervision, and is organized and exists by virtue of the laws of the United States of America, with its principal place of business in the County of Orange, State of California, and authorized to do business and doing business in the County of Orange, State of California. First American is, and at all times mentioned herein was, the Trustee of Don's IRA Account #68-6796-00 (the "IRA Account"), and was authorized to and did administer such account, including all funds and assets therein, pursuant to Don's directions.

6. Plaintiffs are informed and believe, and based thereon allege, that Defendant and Debtor Walt A. Walters ("Walters") is, and at all times mentioned herein was, an

-
-

individual residing in Orange County, California, and doing business under the fictitious business name of American Mortgage Company ("American Mortgage"). American Mortgage is, and at all times mentioned herein was, a sole proprietorship owned and operated by Walters and engaged in the business of brokering and servicing loans. Plaintiffs are further informed and believe, and based thereon allege, that Walters transacts business and holds investments in Clark County, Nevada. Walters and American Mortgage are collectively referred to herein as "Walters."

## GENERAL ALLEGATIONS

7. In or about July 1991, Walters entered into an oral agreement with Plaintiffs wherein, in return for the payment to Walters of a fee for his services, Walters, either directly or under the name American Mortgage, would loan funds owned by Plaintiffs to third parties at profitable rates of interest, which loans would be evidenced by promissory notes secured by deeds of trust on real property located in California or Nevada. At all times material hereto, Walters represented himself as a knowledgeable investment advisor, and reassured the Murphys that he was trustworthy. The Murphys relied on those representations and reassurances in acting as set forth below. Due in large part to their advanced years, the Murphys were particularly vulnerable to the representations and reassurances of Walters.

8. Beginning in or about July 1991 and continuing thereafter to the present date, as part of the agreement and arrangement referred to above, Walters repeatedly represented to Don that:

(a) Walters and/or American Mortgage would use funds invested by the Murphys – including the Murphys' community property funds and the Murphys' funds in the IRA Account invested by First American at Don's direction – exclusively to make loans to third parties at attractive rates of interest, which loans would be secured by deeds of trust on property owned by the third party borrowers and for which the Plaintiffs would be the beneficiaries of said deeds of trust;

(b) There would be sufficient equity in each property taken as security for each such loan to secure repayment of each loan;

2

(c) Walters and/or American Mortgage would properly document each loan with a promissory note and one or more deeds of trust as security therefor;

(d) Walters and/or American Mortgage would diligently and competently service each of the said loans (including, without limitation, collection of all payments of principal and interest) for Plaintiffs' benefit;

(e) Walters and/or American Mortgage would seek and obtain the Plaintiffs' approval before using Plaintiffs' funds to make each loan to third parties;

(f) Walters and/or American Mortgage would maintain a separate record of each loan and of all advances and repayments made on account thereof;

(g) Walters and/or American Mortgage would seek and obtain the permission of Plaintiffs before agreeing with third party borrowers to amend or modify any material terms of the loans, including without limitation, extending the maturity date of any loans and forgiving any of the principal balance or interest due on account of the loans.

(h) Walters and/or American Mortgage would remit to Plaintiffs all payments received on account of each of the said loans on an at least monthly basis; and

(i) Walters and/or American Mortgage had reinvested principal payments received by Walters and/or American Mortgage on account of the above-referenced loans in new loans evidenced by promissory notes secured by deeds of trust on properties located in California and Nevada, which deeds of trust would name the Plaintiffs as beneficiaries.

9. The representations made by Walters as set forth above were in fact false. The true facts are:

(a) Walters then had no intention to use funds advanced by Plaintiffs to Walters and/or American Mortgage exclusively to make loans to third parties at active rates of interest, and secured by deeds of trust on real property owned by the borrowers naming one of the Plaintiffs as beneficiary (whether by promptly assigning Walters' or American Mortgage's interest in the said loans to Plaintiffs or by ensuring that Plaintiffs were named as payees/beneficiaries on the loan documentation at the outset);

(b) Walters then had no intention to invest Plaintiffs' money in loans

3

for which there would be sufficient equity in each property taken as security for each such loan to cover that loan;

(c) Walters then had no intention to properly document each loan with a promissory note and a deed of trust as security therefor;

(d) Walters then had no intention to diligently and competently service each of the said loans for Plaintiffs' benefit;

(e) Walters then had no intention to seek or obtain Plaintiffs' approval and permission before using Plaintiffs' funds to make each loan to third parties;

(f) Walters then had no intention to maintain a separate record of each loan and of all advances and repayments made on account thereof;

(g) Walters then had no intention to seek or obtain the Plaintiffs' permission before agreeing with third party borrowers to amend or modify any material terms of the loans;

(h) Walters then had no intention to remit to Plaintiffs all payments received on account of each of the said loans; and

(i) Walters failed to reinvest principal payments received by Walters and/or American Mortgage on account of the above-referenced loans in new loans evidenced by promissory notes secured by deeds of trust in Plaintiffs' name on properties located in California and Nevada.

10. When Walters made such representations and promises, he knew them to be false and made them with the intent to defraud and deceive Plaintiffs; to induce Plaintiffs to deliver money belonging to Plaintiffs to Walters and/or American Mortgage; to invest with Walters and/or American Mortgage on a continuing basis; and to deter and discourage Plaintiffs from investigating or making inquiries concerning Walters' true use of the funds invested by Plaintiffs with Walters and/or American Mortgage.

11. In reliance on the said representations, Plaintiffs invested and delivered to Walters and/or American Mortgage, through First American for the benefit of the IRA Account and at Don's direction, sums including, but not limited to, the following:

| Approximate Date of Investment | Amount of Investment |
|---|---|
| March 8, 2001 | $102,500 |
| December 27, 2002 | $38,000 |
| March 14, 2003 | $38,000 |
| July 16, 2003 | $30,000 |
| July 16, 2003 | $60,000 |
| August 29, 2003 | $29,970 |
| September 3, 2003 | $15,000 |
| October 22, 2003 | $35,000 |
| December 8, 2003 | $130,000 |
| January 21, 2004 | $57,000 |
| January 26, 2004 | $25,000 |
| May 17, 2004 | $30,000 |
| May 17, 2004 | $35,000 |
| May 1, 2005 | $35,000 |
| May 16, 2005 | $32,500 |
| **Total** | **$692,970** |

In addition to the sums set forth above in reliance on the said representations, Plaintiffs also directly invested (i.e., not through the IRA Account) with Walters and/or American Mortgage additional sums totaling approximately $500,000.

12. Plaintiffs are informed and believe, and based thereon allege, that Walters and American Mortgage failed to carry out the promises and undertakings they had made to Plaintiffs alleged above. For example:

(a) In or about March 2001, the Murphys, through the IRA Account, paid Walters and/or American Mortgage the sum of $102,500 to fund a loan purportedly evidenced by a promissory executed by one Jimmy Cline and one Marlene Cline, as makers, in the original principal sum of $205,000, which note was purportedly secured by a deed of trust on real property located at 2603 E. Riding Way, Orange, California (the "Cline Loan"). The IRA

5

1   Account was to have a 50% interest in this loan (i.e., $102,500). By its terms, the Cline Loan
2   was to mature on or about May 1, 2006. Plaintiffs are informed and believe, and based thereon
3   allege, that Walters or First American never assigned the note and deed of trust to Plaintiffs.
4   Plaintiffs are further informed and believe, and based thereon allege, that the Cline Loan was
5   paid in full upon the sale of the property on or about July 8, 2003 to one Bulmaro F. Ruiz.
6   However, none of the proceeds from the loan payoff were paid to Plaintiffs, or any of them.

(b)  In or about December 2002, the Murphys, through the IRA Account, paid Walters and/or American Mortgage the sum of $38,000 to fund a loan purportedly evidenced by a promissory executed by one Thomas Thomas, as makers, in the original principal sum of $113,000, which note was purportedly secured by a deed of trust on real property located at 860 N. Kirby Dr., La Habra, California (the "Thomas Loan"). The IRA Account was to have a 33.63% interest in this loan (i.e., $38,000). By its terms, the Thomas Loan was to mature on or about January 1, 2008, however, the maturity date was extended to December 31, 2008. Although the Thomas Loan was due to mature in December 2008, Plaintiffs have not received the proceeds from any payoff of the loan.

(c)  In or about March 2003, the Murphys, through the IRA Account, paid Walters and/or American Mortgage the sum of $38,000 to fund a loan purportedly evidenced by a promissory executed by one Javier Salmeron, as maker, in the original principal sum of $38,000, which note was purportedly secured by a deed of trust on real property located at 2401 Redcoach Lane, La Habra, California (the "Salmeron Loan"). By its terms, the Salmeron Loan is to mature on or about April 1, 2010. Plaintiffs have not received any interest payments from Walters and/or American Mortgage for the Salmeron Loan since May 1, 2008.

(d)  In or about July 2003, the Murphys, through the IRA Account, paid Walters and/or American Mortgage the sum of $30,000 to fund a loan purportedly evidenced by a promissory executed by one Bennie Courtney and one Sandra Courtney, as makers, in the original principal sum of $30,000, which note was purportedly secured by a deed of trust on real property located at 4152 Palo Verde Ave., Lakewood, California (the "Courtney Loan"). By its terms, the Courtney Loan was to mature on or about August 1, 2010. Plaintiffs

6

are informed and believe, and based thereon allege, that the Courtney Loan was paid in full upon the sale of the property on or about January 15, 2004 to one Donna Lee However, none of the proceeds from the loan payoff were paid to Plaintiffs, or any of them.

(e) In or about July 2003, the Murphys, through the IRA Account, paid Walters and/or American Mortgage the sum of $60,000 to fund a loan purportedly evidenced by a promissory executed by one Brigham Evans and one Robin Evans, as makers, in the original principal sum of $60,000, which note was purportedly secured by a deed of trust on real property located at 29481 Mariners Way, Lake Elsinore, California (the "Evans Loan"). By its terms, the Evans Loan was to mature on or about August 1, 2010. Plaintiffs are informed and believe, and based thereon allege, that the Evans was paid in full upon the sale of the property on or about June 18, 2004 to one Jose Galvin. However, none of the proceeds from the loan payoff were paid to Plaintiffs, or any of them.

(f) In or about August 2003, the Murphys, through the IRA Account, paid Walters and/or American Mortgage the sum of $29,970 to fund a loan purportedly evidenced by a promissory executed by one Agincourt, Inc., as maker, which note was purportedly secured by a deed of trust on real property located at 842 Harbor Island Drive, Newport Beach, California (the "Agincourt Loan"). The original principal sum of the Agincourt Loan is presently unknown, but is believed by Plaintiffs to be at least $29,970. The IRA Account was to have a proportionate interest in this loan corresponding to an investment of $29,970. By its terms, the Agincourt Loan was to mature on or about September 1, 2006, however, the maturity date was extended to December 31, 2008. Plaintiffs are informed and believe, and based thereon allege, that Walters or First American never assigned the note and deed of trust to Plaintiffs. Plaintiffs are further informed and believe, and based thereon allege, that the Agincourt Loan was paid in full upon the sale of the property on or about June 2, 2004 to one Brenda Hulie. However, none of the proceeds from the loan payoff were paid to Plaintiffs, or any of them.

(g) In or about September 2003, the Murphys, through the IRA Account, paid Walters and/or American Mortgage the sum of $15,000 to fund a loan purportedly

7

evidenced by a promissory executed by one James Payne and one Marie Payne, as makers, in the original principal sum of $15,000, which note was purportedly secured by a deed of trust on real property located at 2331 Overtree Lane, Las Vegas, Nevada (the "Payne Loan"). By its terms, the Payne Loan was to mature on or about October 1, 2008. Plaintiffs are informed and believe, and based thereon allege, that the Payne Loan was paid in full upon its maturity in or about October 2008. However, none of the proceeds from the loan payoff were paid to Plaintiffs, or any of them.

(h)     In or about October 2003, the Murphys, through the IRA Account, paid Walters and/or American Mortgage the sum of $35,000 to fund a loan purportedly evidenced by a promissory executed by one William Taylor, as maker, in the original principal sum of $35,000, which note was purportedly secured by a deed of trust on real property located at 6600 Castor Tree Way, Las Vegas, Nevada (the "Taylor Loan"). By its terms, the Taylor Loan was to mature on or about November 1, 2008, however, the maturity date was extended to December 31, 2008. Plaintiffs are informed and believe, and based thereon allege, that the Taylor Loan was paid in full upon the sale of the property on or about January 24, 2004 to one Kyle Willhite. However, none of the proceeds from the loan payoff were paid to Plaintiffs, or any of them.

(i)     In or about December 2003, the Murphys, through the IRA Account, paid Walters and/or American Mortgage the sum of $130,000 to fund a loan purportedly evidenced by a promissory executed by one Makenzie Corp., as maker, in the original principal sum of $130,000, which note was purportedly secured by a deed of trust on real property located at 216 W. Philadelphia, Las Vegas, Nevada (the "Makenzie Loan"). By its terms, the Makenzie Loan was to mature on or about January 1, 2006, however, the maturity date was extended to December 31, 2008. Plaintiffs presently lack knowledge as to whether the Makenzie Loan was paid in full upon its maturity. However, if there was a loan payoff, no proceeds from such loan payoff were paid to Plaintiffs, or any of them. Additionally, Plaintiffs have not received any interest payments from Walters and/or American Mortgage for the Makenzie Loan since April 1, 2008.


(j) In or about January 2004, the Murphys, through the IRA Account, paid Walters and/or American Mortgage the sum of $57,000 to fund a loan purportedly evidenced by a promissory executed by one Pamela Ladd, as maker, in the original principal sum of $57,000, which note was purportedly secured by a deed of trust on real property located at 1008 Emerald Tint Court, Las Vegas, Nevada (the "Ladd Loan"). By its terms, the Ladd Loan was to mature on or about February 1, 2009. Plaintiffs are informed and believe, and based thereon allege, that Walters or First American never assigned the note and deed of trust to Plaintiffs. No proceeds from any loan payoff have been paid to Plaintiffs, or any of them, nor have Plaintiffs ever authorized Walters or American Mortgage to forgive any amount of the Ladd Loan.

(k) In or about January 2004, the Murphys, through the IRA Account, paid Walters and/or American Mortgage the sum of $25,000 to fund a loan purportedly evidenced by a promissory executed by one Keith Salo, as maker, in the original principal sum of $25,000, which note was purportedly secured by a deed of trust on real property located at 1012 Eugene Cernan St., Las Vegas, Nevada (the "Salo Loan"). By its terms, the Salo Loan was to mature on or about March 1, 2005, however, the maturity date was extended to December 31, 2008. Plaintiffs are informed and believe, and based thereon allege, that the Salo Loan was paid in full upon the sale of the property on or about November 15, 2005. However, none of the proceeds from the loan payoff were paid to Plaintiffs, or any of them.

(l) In or about May 2004, the Murphys, through the IRA Account, paid Walters and/or American Mortgage the sum of $30,000 to fund a loan purportedly evidenced by a promissory executed by one Leonardo Ayala, as maker, in the original principal sum of $30,000, which note was purportedly secured by a deed of trust on real property located at 1015-1017 Spurgeon St., Santa Ana, California (the "Ayala Loan"). By its terms, the Ayala Loan was to mature on or about June 1, 2009. No proceeds from any loan payoff have been paid to Plaintiffs, or any of them, nor have Plaintiffs ever authorized Walters or American Mortgage to forgive any amount of the Ayala Loan.

(m) In or about May 2004, the Murphys, through the IRA Account,

9

paid Walters and/or American Mortgage the sum of $35,000 to fund a loan purportedly evidenced by a promissory executed by one Brian Werstuck and one Linda Werstuck, as makers, in the original principal sum of $35,000, which note was purportedly secured by a deed of trust on real property located at 5945 Ponderosa Way, Las Vegas, Nevada (the "Werstuck Loan"). By its terms, the Werstuck Loan was to mature on or about December 1, 2004, however, the maturity date was extended to December 31, 2008. Plaintiffs are informed and believe, and based thereon allege, that Walters or First American never assigned the note and deed of trust to Plaintiffs. No proceeds from any loan payoff have been paid to Plaintiffs, or any of them, nor have Plaintiffs ever authorized Walters or American Mortgage to forgive any amount of the Werstuck Loan.

    (n)  In or about May 2005, the Murphys, through the IRA Account, paid Walters and/or American Mortgage the sum of $35,000 to fund a loan purportedly evidenced by a promissory executed by one Nick R. Esposito and one Ronald L. Hausauer, as makers, in the original principal sum of $84,000, which note was purportedly secured by a deed of trust on real property located at 2230 Ellis St., Las Vegas, Nevada (the "Esposito/Hausauer Loan"). The IRA Account was to have a 41.67% interest in this loan (i.e., $35,000). By its terms, the Esposito/Hausauer Loan was to mature on or about December 31, 2008. Plaintiffs are informed and believe, and based thereon allege, that the Esposito/Hausauer Loan was paid in full upon the sale of the property, initially on or about October 18, 2005, and again on August 20, 2007 to one James Walker. However, none of the proceeds from the loan payoff were paid to Plaintiffs, or any of them.

    (o)  In or about May 2005, the Murphys, through the IRA Account, paid Walters and/or American Mortgage the sum of $32,500 to fund a loan purportedly evidenced by a promissory executed by one Dan Lewis and one Roberta Davis, as makers, in the original principal sum of $395,000, which note was purportedly secured by a deed of trust on real property located at 5642 Kellog Drive, Yorba Linda, California (the "Lewis/Davis Loan"). The IRA Account was to have a 8.22% interest in this loan (i.e., $32,500). By its terms, the Lewis/Davis Loan was to mature on or about May 1, 2010. Plaintiffs are informed and believe,

and based thereon allege, that Walters and/or American Mortgage forgave the Lewis/Davis Loan by accepting a deed in lieu of foreclosure. Plaintiffs never authorized Walters or American Mortgage to forgive any amount of the Lewis/Davis Loan or accept a deed in lieu of foreclosure. Plaintiffs are further informed and believe, and based thereon allege, that American Mortgage, without Plaintiffs' knowledge or consent, subsequently conveyed the property to Walters, who then refinanced the property –without Plaintiffs' knowledge or consent – in the approximate sum of $775,000 without account to Plaintiffs for the proceeds of the Lewis/Davis Loan.

13. To date, Plaintiffs have not received repayment of any of the principal sums due from the third party borrowers with respect to the loans arranged and/or serviced by Walters and/or American Mortgage with funds invested by Plaintiffs. Furthermore, Plaintiffs have not received any interest payments attributable to any of the said loans since such payments from Walters and/or American Mortgage abruptly ceased in or about May 2008. Although Plaintiffs have repeatedly demanded that Walters provide an accounting to Plaintiffs of the funds due and owing to Plaintiffs by virtue of payoffs of the loans made to third party borrowers with Plaintiffs' funds through Walters and/or American Mortgage and interest payments due and owing to Plaintiffs, Walters has failed and refused, and continues to fail and refuse, to provide such an accounting.

14. Based on the foregoing, Plaintiffs are informed and believe, and based thereon allege, that Walters used the sums invested with Walters and/or American Mortgage by Plaintiffs for his own purposes and benefit, and with a complete and callous disregard for the property rights, and financial and emotional well-being, of the Murphys.

15. Plaintiffs are informed and believe, and based thereon allege, that Walters secretly used some or all of the funds delivered to him by Plaintiffs, and/or some or all of the proceeds from the repayment or refinancing of the loans described above, to: (i) purchase, in Walters' name and/or the names of business entities in which Walters owns a substantial interest, equity interests in one or more properties located in California and Nevada; and (ii) make certain additional loans to third parties, the proceeds from the repayment of which Walters has retained for his sole and secret benefit.

11

## FIRST CLAIM FOR RELIEF

### [Nondischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(2)(A) – Fraud]

16. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 15, inclusive, of this Complaint

17. As alleged above, Defendant Walters defrauded Plaintiffs by (i) representing to the Murphys that he was a knowledgeable and trustworthy investment advisor when in fact those representations were not so, and with the full knowledge of the advanced years of the Murphys and their particular susceptibility to those representations; (ii) misrepresenting, among other things, that he would obtain prior approval from Plaintiffs before investing Plaintiffs' money in specific loans; that he would properly document and keep record of the loans and that Plaintiffs would hold a beneficial interest in each of the borrower's real property as security for each of the loans; and that he would remit to Plaintiffs the monies received by Walters and/or American Mortgage on account of such loans, unless directed by Plaintiffs to reinvest such funds in which case the proceeds would be reinvested in new loans evidenced by promissory notes secured by deeds of trust naming Plaintiffs as beneficiaries; and (iii) by suppressing and concealing the true facts that, among other things, Walters took the funds rightfully owed to Plaintiffs on account of the above-described loans and converted them to Walters' own use and for his own secret benefit.

18. At the times Walters made the foregoing representations and promises, and that Plaintiffs acted in reliance thereon as alleged herein, Plaintiffs were ignorant of the true facts as set forth above. Plaintiffs could not, in the exercise of reasonable diligence, have discovered the true facts because (i) the true facts were within Walters' exclusive knowledge; and (ii) Walters and/or American Mortgage continued to make periodic payments to Plaintiffs on account of the investments described herein until in or about May 2008. For example, so as not to alert Plaintiffs to their financial peril, and to discourage Plaintiffs from investigating and discovering his scheme to defraud Plaintiffs as alleged herein, Walters continued to make payments to Plaintiffs in the exact amount of previous monthly interest payments for certain loans even after Walters had received a payoff of the principal amount of the loans. If Plaintiffs

12

had been aware of the true facts concealed by Walters, Plaintiffs would not have made the above-described investments and/or would have ceased making any further investments with Walters and/or American Mortgage.

19. As a proximate result of Walters' breaches of contract and fraudulent conduct as alleged herein, Plaintiffs have been deprived and cheated out of the funds invested by them with Walters and/or American Mortgage, as well as of the use of those funds. By reason of the foregoing, Plaintiffs have been damaged in an amount to be proven at trial, but presently estimated by Plaintiffs to be in excess of $1,200,000.

20. Walters' acts and omissions constitute a nondischargeable debt for money obtained by false pretenses, false representation, and actual fraud including, but not limited to, the false representation that the payoffs of loans made with Plaintiffs' monies would be reinvested in new loans evidenced by promissory notes and secured by deeds of trust naming Plaintiffs as beneficiaries with properties located in California and Nevada, and thereby to commit a fraud upon the Plaintiffs.

21. The aforementioned conduct of Walters was oppressive, fraudulent, malicious, and intended to injure Plaintiffs and deprive them of the benefits of their investments and their agreement with Walters. Walters conducted himself with a willful and conscious disregard of Plaintiffs' rights so as to justify an award of exemplary and punitive damages in an amount to be determined by the trier of fact.

### SECOND CLAIM FOR RELIEF

**[Nondischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(4) – Fraud or Defalcation While Acting in a Fiduciary Capacity]**

22. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 15 and 17 through 21, inclusive, of this Complaint as if fully set forth herein.

23. By undertaking, in the expectation of compensation, to solicit, negotiate and/or collect payments and otherwise service the above-described loans secured by real property and otherwise, Walters acting in the capacity of a real estate broker, Walters stood in a

13

position of trust and confidence with Plaintiffs and, as such, assumed and owed to Plaintiffs fiduciary duties (i) of utmost care, integrity, honesty and loyalty in his dealings with and for Plaintiffs; (ii) to make the fullest disclosure of all material facts that might affect Plaintiffs' interests; and (iii) to refrain from obtaining any advantage over Plaintiffs by virtue of his relationship with them.

24. Walters, as the fiduciary of Plaintiffs, committed fraud upon Plaintiffs as set forth above.

25. Walters breached his fiduciary duties to Plaintiffs by his acts and conduct as more specifically described above, including, without limitation, by failing to properly document the loan transactions; misappropriating Plaintiffs' funds; failing to disclose to Plaintiffs Walters' actions and other information that would materially affect Plaintiffs' decision to invest funds with Walters and/or American Mortgage or to enter into the various loan transactions; and by taking advantage of Plaintiffs by virtue of the nature of his relationship of trust and confidence with them.

26. As a proximate result of Walters' breaches of fiduciary duty, Plaintiffs have been damaged in a sum to be proven at trial but presently estimated by Plaintiffs to exceed $1,200,000.

27. Walters' conduct as set forth herein, including, but not limited to, his misappropriation of funds and willful failure to properly document the loan transactions and ensure that Plaintiffs were beneficiaries on the deeds of trust securing the loans, constitute a nondischargeable debt for fraud and defalcation pursuant to 11 U.S.C. § 523(a)(4).

### THIRD CLAIM FOR RELIEF

**[Nondischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(6)]**

28. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 15, 17 through 21, and 23 through 27, inclusive, of this Complaint as if fully set forth herein.

29. Defendant Walters' conduct as alleged herein was wrongful and intentional and constitutes a willful and malicious injury to Plaintiffs.

14

30. Walters' acts were without just cause or excuse.

31. Walters acted with the intent to cause injury to Plaintiffs or he believed that injury was substantially certain to occur as a result of his conduct.

32. Walters' conduct constitutes a nondischargeable debt for willful and malicious injury pursuant to 11 U.S.C. § 523(a)(6).

## FOURTH CLAIM FOR RELIEF

### [Financial Abuse of an Elder Pursuant to Cal. Welf. & Inst. Code § 15610.30]

33. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 15, 17 through 21, 23 through 27, and 29 through 32, inclusive, of this Complaint as if fully set forth herein.

34. At all relevant times mentioned herein, Walters stood in a position of trust to the Murphys in that he acted in the capacity of a broker and voluntarily undertook to, and did, solicit money from the Murphys to lend to third parties, accept custody of the Murphys' money to lend to third parties, negotiate loans of the Murphys' money to third parties, and collect payments and perform services in connection with such loans which were secured by liens on real property. At all times material hereto, Walters was fully aware of the advanced years of the Murphys, and of their particular vulnerability to Walters' representations and reassurances, thereby exploiting the Murphys to their extreme disadvantage.

35. Walters' actions as alleged herein – including, without limitation misappropriating or retaining the Murphys' funds in an amount currently estimated to be in excess of $1,200,000 – constitute taking, secreting, appropriating, or retaining personal property belonging to the Murphys to a wrongful use and/or with the intent to defraud; and/or assisting in the taking, secreting, appropriating, or retaining personal property belonging to the Murphys to a wrongful use and/or with the intent to defraud.

36. Walters took, secreted, appropriated, or retained the Murphys' personal property in bad faith in that Walters knew or should have known that the Murphys had the right to repayment of the funds delivered by them to Walters and/or American Mortgage, together with all of the principal and interest due on account of the loans made with third parties using the

15

Murphys' funds; and/or Walters never intended to pay or return to the Murphys the funds delivered to Walters as alleged herein, or the principal and interest due on account of the loans made with third parties using the Murphys' funds.

37. By virtue of the above acts and conduct, Walters exploited the Murphys by converting the Murphys' money, assets or property with the intention of permanently depriving them of the ownership, use, benefit or possession of their money, assets or property.

38. As a proximate result of Walters' wrongful actions as alleged herein, the Murphys have been damaged in a sum to be proven at trial, but presently estimated to exceed $1,200,000, as well as other further damages available pursuant to California Welfare & Institutions Code Section 15610 et al.

39. Plaintiffs have retained attorneys to prosecute this action on their behalf, and have incurred, and in connection with this action will continue to incur, liability to pay the said attorneys' fees.

## FIFTH CLAIM FOR RELIEF

### [Conversion]

40. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 15, 17 through 21, 23 through 27, 29 through 32, and 34 through 39, inclusive, of this Complaint as if fully set forth herein.

41. Beginning in or about July 2003, and continuing to the present date, Walters took Plaintiffs' funds from Plaintiffs' possession and converted the same to Walters' own use.

42. In or about November 2008, Plaintiffs demanded the immediate return of the above-referenced personal property. However, Walters failed and refused, and continues to fail and refuse, to return the said funds to Plaintiffs.

## SIXTH CLAIM FOR RELIEF

### [Breach of Oral Contract]

43. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 15, inclusive, of this Complaint as if fully set forth herein.

16

44.  Plaintiffs have performed all conditions, covenants, and promises required to be performed by them in accordance with the terms of their oral contract with Walters.

45.  Walters breached the contract by acting as set forth in paragraphs 12 through 14, inclusive.

46.  As a proximate result of Walters' breach of contract, Plaintiffs have been damaged in an amount to be proven at trial, but presently estimated to exceed the sum of $1,200,000.

### SEVENTH CLAIM FOR RELIEF

### [Money Had and Received]

47.  Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 15, inclusive, of this Complaint as if fully set forth herein.

48.  Within the last two years, Walters became indebted to Plaintiffs in the principal sum of $1,200,000 for money had and received by Walters for the use and benefit of Plaintiffs.

49.  Although demand for payment has been made, no part of the said sum has been paid by Walters to Plaintiffs and there is now due and owing to Plaintiffs the sum of $1,200,000, together with interest thereon at the legal rate.

### EIGHTH CLAIM FOR RELIEF

### [Unjust Enrichment]

50.  Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 15, 48, and 49, inclusive, of this Complaint as if fully set forth herein.

51.  Walters became unjustly enriched in the sum of $1,200,000 for money for money converted from Plaintiffs to the use and benefit of Walters.

52.  Although demand for payment has been made, no part of the said sum has been paid by Walters to Plaintiffs and there is now due and owing to Plaintiffs the sum of $1,200,000, together with interest thereon at the legal rate.

### PRAYER

WHEREFORE, Plaintiffs pray judgment against Walters, as follows:

17

**ON THE FIRST CLAIM FOR RELIEF**

1. For a determination that all damages suffered and any claim or judgment entered thereon are deemed nondischargeable;

**ON THE SECOND CLAIM FOR RELIEF**

2. For a determination that all damages suffered and any claim or judgment entered thereon are deemed nondischargeable;

**ON THE THIRD CLAIM FOR RELIEF**

3. For a determination that all damages suffered and any claim or judgment entered thereon are deemed nondischargeable;

**ON THE FOURTH CLAIM FOR RELIEF**

4. For compensatory damages according to proof in an amount that exceeds $10,000;

5. For additional statutory damages, including, without limitation, costs of suit including reasonable attorneys' fees pursuant to California Welfare & Institutions Code Section 15657.5;

6. For punitive damages in an amount in excess of $10,000;

**ON THE FIFTH CLAIM FOR RELIEF**

7. For the value of the property converted according to proof;

8. For punitive damages in an amount in excess of $10,000;

**ON THE SIXTH CLAIM FOR RELIEF**

9. For compensatory damages according to proof in an amount that exceeds $10,000;

**ON THE SEVENTH CLAIM FOR RELIEF**

10. For the sum of $1,200,000;

**ON THE EIGHTH CLAIM FOR RELIEF**

11. For the sum of $1,200,000;

**ON ALL CLAIMS FOR RELIEF**

12. For prejudgment interest to the maximum extent permitted by law;

1  13. For costs of suit; and

2  14. For such other and further relief as this Court may deem just and proper.

3  DATED: December 7, 2009                    **SulmeyerKupetz**

By /s/ John M. Samberg
John M. Samberg
Attorneys for Plaintiffs ANDREW DON,
MURPHY, CONNIE MURPHY, and
FIRST AMERICAN TRUST FSB, as
Trustee of ANDREW DONALD MURPHY
IRA ACCOUNT #68-6796-00

41301.02\Complaint re Nondischargeability (Walters)(12-7-09).doc

19